**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000753
25-MAR-2026
07:49 AM
Dkt. 188 SO

NO. CAAP-23-0000753

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
HAILEY DANDURAND, Defendant-Appellant,
and
STEPHEN BROWN, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-17-0001731)


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, and Wadsworth and McCullen, JJ.)

Defendant-Appellant Hailey Dandurand (**Dandurand**) appeals from the following judgment and orders entered in the Circuit Court of the First Circuit[1] (**Circuit Court**): (1) the December 6, 2023 Judgment of Conviction and Sentence (**Judgment**); (2) the December 6, 2023 Mittimus; Warrant of Commitment; (3) the December 12, 2023 Order Granting [Plaintiff-Appellee State of Hawaii's (**State**)] Motion for Extended Term Sentencing; (4) the December 12, 2023 Order of Restitution; and (5) the December 21, 2023 Findings of Fact, Conclusions of Law, and Order Granting in Part State's Motion for Consecutive Term Sentencing.

Following a jury trial, Dandurand was convicted of the following: (1) Murder in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 and 706-656 (**Count 1**); (2) Kidnapping, in violation of HRS §§ 707-720(1)(c) and/or 707-

---

[1] The Honorable Rowena A. Somerville presided.

720(1)(e) (**Counts 2 and 3**);[2] (3) Burglary in the First Degree, in violation of HRS § 708-810(1)(c) (**Count 4**); (4) Unauthorized Entry into Motor Vehicle in the Second Degree, in violation of HRS § 708-836.6 (**Count 5**); and (5) Unauthorized Possession of Confidential Personal Information, in violation of HRS § 708-839.55 (**Count 6**).  As relevant to this appeal, Dandurand was sentenced to:

> an indeterminate term of life imprisonment with the possibility of parole in Count 1, to be served consecutively with Count 3 for an indeterminate term of life imprisonment with the possibility of parole, to be served consecutively with Count 4, for an extended term of twenty (20) years, and one (1) year in Count 5, ten (10) years in Count 6, with credit for any term served. . . . Counts 5 and 6 shall run concurrently with Counts 1, 3 and 4 and with any other sentence currently serving.

(Capitalization altered.)

On appeal, Dandurand contends that:

(1) her trial counsel, Barry Sooalo (**Trial Counsel**), was ineffective for failing (a) to obtain expert and lay witnesses to testify for the defense, (b) to obtain transcripts of Defendant-Appellee Stephen Brown's (**Brown**) trial prior to the start of Dandurand's trial, (c) to obtain expert witnesses for Dandurand's extended-term sentencing hearing, (d) to timely file Dandurand's motion for new trial, and (e) to argue a "legally cognizable basis" for the inadmissibility of Dandurand's statement to Honolulu Police Department Corporal David Kaʻawa (**Cpl. Kaʻawa**) during the field show-up;

(2) the Deputy Prosecuting Attorney (**DPA**) committed misconduct during his closing "where he expressed his personal belief that Dandurand's behavior was not consistent with a victim of abuse";

(3) the Circuit Court abused its discretion in finding that M.E., a minor, was competent to testify;

(4) the Circuit Court erred in denying Dandurand's motion to impanel a jury prior to imposing consecutive sentences;

(5) the Circuit Court erred in admitting Dandurand's

---

[2]    On December 21, 2023, the Circuit Court ruled that "[n]o judgment will enter as to [C]ount 2 due to merger."

statement to Cpl. Kaʻawa during the field show-up;

(6) the Circuit Court abused its discretion in precluding Dandurand from calling certain witnesses due to trial counsel's alleged violations of Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 16; and

(7) the Circuit Court abused its discretion in denying Dandurand's August 2, 2023 Motion to Continue Hearing on Extended Term Sentencing (**Motion to Continue Sentencing Hearing**).[3/]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Dandurand's contentions as follows, and affirm.

(1) Dandurand contends that Trial Counsel was ineffective based on several alleged errors or omissions. We address each of these bases below.

When reviewing ineffective assistance of counsel claims, this court considers "whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases." State v. Yuen, 154 Hawaiʻi 434, 443-44, 555 P.3d 121, 130-31 (2024) (quoting State v. Wakisaka, 102 Hawaiʻi 504, 513-14, 78 P.3d 317, 326-27 (2003)).

> The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

Id. at 444, 555 P.3d at 131 (quoting Wakisaka, 102 Hawaiʻi at 514, 78 P.3d at 327).

(1)(a) and (c)  Dandurand contends that Trial Counsel was ineffective for failing to secure lay and expert witnesses to testify for the defense.  She argues that expert testimony was critical to her duress and choice-of-evils defenses, so as to

---

[3/]     Dandurand's points of error have been consolidated and renumbered for organizational clarity.

explain her "apparent acquiescence in Brown's actions" and to support her testimony that "she only complied because she was a victim of abuse." Dandurand further contends that Trial Counsel was ineffective for failing to secure expert witnesses for her extended term sentencing proceedings, including "sentencing mitigation expert" Dr. Colin King (**King**) and experts who "would testify on the issue of battered woman syndrome (BWS) and/or post-traumatic stress disorder." (Footnote omitted.) Without such experts, Dandurand argues, "the jury had no objective testimony that it was not necessary for the protection of the public to extend Dandurand's sentences."

"Ineffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." State v. Richie, 88 Hawaiʻi 19, 39, 960 P.2d 1227, 1247 (1998) (citing State v. Fukusaku, 85 Hawaiʻi 462, 481, 946 P.2d 32, 51 (1997)). Here, Dandurand relies on a letter sent by her mother to the Circuit Court that criticizes Trial Counsel's performance in several respects. Dandurand points to no affidavits or other sworn statements from the witnesses who were not called. Thus, she has not established that the alleged errors resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. In these circumstances, however, we affirm the Judgment without prejudice to a subsequent HRPP Rule 40 petition raising the asserted claims. See State v. Silva, 75 Haw. 419, 439, 864 P.2d 583, 592 (1993).

(1)(b) Dandurand contends that Trial Counsel was ineffective for failing to obtain transcripts of Brown's trial prior to the start of her own trial because without them, Trial Counsel could not adequately prepare and could not "confront two of the State's witnesses on a critical inconsistency." Specifically, Dandurand argues that in Brown's trial, HPD Detective Robert Jones (**Det. Jones**) and HPD Evidence Specialist Birdie Farley (**Farley**) testified that they were present at Telma Boinville's (**Boinville**) autopsy but did not mention seeing red hairs in Boinville's hand, whereas at Dandurand's trial, Det.

4

Jones testified that he saw "reddish pinkish red hairs" in Boinville's hand and Farley testified that she saw "loose hairs" in Boinville's hands. Dandurand faults Trial Counsel for not conducting any cross-examination of these witnesses.

We note initially that Dandurand merely asserts that the JEFS record for this case does not contain any requests by Trial Counsel for transcripts of Brown's trial. She has not established that Trial Counsel failed to obtain copies or descriptions of the relevant testimony from another source or was not otherwise made sufficiently aware of the testimony so as to make an informed decision regarding cross-examination. In any event, counsel's decision to conduct cross-examination and the nature of the questioning is generally a strategic decision. See Richie, 88 Hawaiʻi at 39, 960 P.2d at 1247. On this record, Dandurand has not shown that the alleged failure to obtain transcripts or to cross-examine Detective Jones or Farley constituted ineffective assistance of counsel.

(1)(d) Dandurand contends that Trial Counsel was ineffective for failing to timely file her August 13, 2023 Motion for New Trial (**Motion for New Trial**), which resulted in the motion being denied by the Circuit Court for lack of jurisdiction. Dandurand argues summarily that each of the issues raised in the motion was potentially meritorious. These included arguments that: (1) "[t]he State has not shown by proof beyond a reasonable doubt that . . . Dandurand intended to kill [Boinville]" (capitalization altered) (the **intent argument**); (2) "[Dandurand's] defense [was] impaired by her inability to call expert witnesses" (the **expert witness argument**); and (3) the DPA committed prosecutorial misconduct by arguing in closing that "[Dandurand] killed [Boinville] and that [Dandurand] did so by asphyxiating [her] to death" (the **prosecutorial misconduct argument**).[4]

Trial Counsel's failure to timely file the Motion for New Trial was plainly an error "reflecting counsel's lack of

---

[4] Although the Motion for New Trial asserted seven "undisputed facts" in support, only three arguments were made based on these alleged facts.

skill, judgment, or diligence[.]" Wakisaka, 102 Hawaiʻi at 514, 78 P.3d at 327. The issue is whether Dandurand has shown that this error resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. See id.

Having carefully reviewed the Motion for New Trial, we conclude that Dandurand did not satisfy this burden. In brief:

(i) The intent argument. There was sufficient circumstantial evidence presented at trial from which the jury could have reasonably inferred that Dandurand had the required mental state to commit second degree murder. See State v. Gomes, 117 Hawaiʻi 218, 227, 177 P.3d 928, 937 (2008) ("[T]he mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." (internal quotation marks omitted) (quoting State v. Bui, 104 Hawaiʻi 462, 467, 92 P.3d 471, 476 (2004))). This evidence included the following: Dandurand's and Brown's fingerprints were found at the scene of the incident, and Dandurand's testimony placed them both there; numerous weapons at the scene had Boinville's blood/DNA on them, including a folding knife, kitchen knife, machete, hammer, and meat tenderizer; the injuries to Boinville indicated she was attacked from the front, and from behind and from the right; Boinville's blood/DNA was found on Dandurand's shorts, left hand, and left foot; Dandurand testified that she held the machete, tied up Boinville, and put the bag over her head (though she claimed it was under duress); M.E. testified that both Dandurand and Brown tied her up and put tape on her mouth; Det. Jones testified that he saw "reddish pinkish red hairs" in Boinville's hand and Farley testified that she saw "loose hairs" in Boinville's hands; Cpl. Kaʻawa testified that as he waited with Dandurand for the field show-up, she said, "Can you just pull your gun out and shoot me in the head. My life is over after today" (the **Shoot-Me Statement**); and Dandurand was arrested wearing Boinville's earrings and with Boinville's debit card in the pouch of the hoodie she was wearing. The evidence supported the required mental state to commit second degree murder as either a principal or an accomplice. See State v. Brantley, 84 Hawaiʻi 112, 121-22, 929 P.2d 1362, 1371-72 (App.

1996). The intent argument did not support a new trial.

(ii) <u>The expert witness argument</u>. For the reasons discussed below in Section (6), the Circuit Court did not abuse its discretion in precluding Dandurand from calling certain expert witnesses as a sanction for discovery violations under HRPP Rule 16. The expert witness argument did not support a new trial.

(iii) <u>The prosecutorial misconduct argument</u>. The State did not argue at trial that Boinville died by asphyxiation. Rather, the State argued that tying the bag over Boinville's head was evidence of Dandurand's state of mind, *i.e.*, "[she] meant to kill [Boinville]." The prosecutorial misconduct argument did not support a new trial.

(iv) <u>Summary</u>. Because none of the arguments made in the Motion for New Trial had merit, a new trial was not warranted, and Trial Counsel's error in failing to timely file the motion could not have resulted in the withdrawal or substantial impairment of a potentially meritorious defense. Accordingly, Dandurand has not shown that Trial Counsel's error constituted ineffective assistance of counsel.

(1)(e) Dandurand contends that Trial Counsel was ineffective for failing to make "legally sound" or "legally cognizable" arguments to exclude her Shoot-Me Statement to Cpl. Kaʻawa at the hearings on her March 17, 2020 motion to suppress evidence (**Suppression Motion**) and the State's December 31, 2021 motion to determine voluntariness (**Voluntariness Motion**). Dandurand argues that Trial Counsel should have argued that the Shoot-Me Statement was inadmissible or not voluntary because "it was the produc[t] of [an] un-Mirandized custodial interrogation."[5]

Trial Counsel did just that. In the Suppression Motion, he argued that Dandurand was in custody when she made the alleged statement but was not given required <u>Miranda</u> warnings. Moreover, at the September 1, 2022 hearing on the Suppression

---

[5] "Under <u>Miranda</u>[ v. Arizona, 384 U.S. 436 (1966)], warnings must be provided when a defendant is (1) in custody, and (2) under interrogation." <u>State. v. Eli</u>, 126 Hawaiʻi 510, 521, 273 P.3d 1196, 1207 (2012) (citing <u>State v. Ah Loo</u>, 94 Hawaiʻi 207, 210, 10 P.3d 728, 731 (2000)).

Motion and the Voluntariness Motion (**Voluntariness Hearing**), Trial Counsel cross-examined Cpl. Kaʻawa on whether Dandurand was in custody when she was with him.

At related hearings, Trial Counsel also argued that the alleged statement was inadmissible because its prejudicial effect outweighed its probative value under HRE Rule 403, and because the statement was not subject to a hearsay exception. Although these other arguments raised evidentiary rather than constitutional issues, asserting them appears to have been a strategic choice. See State v. Silva, 75 Haw. 419, 441, 864 P.2d 583, 593 (1993) ("[D]efense counsel's tactical decisions at trial generally will not be questioned by a reviewing court. Lawyers require and are permitted broad latitude to make on-the-spot strategic choices in the course of trying a case." (internal quotation marks and citation omitted) (first quoting State v. Antone, 62 Haw. 346, 352, 615 P.2d 101, 106 (1980), then citing State v. Kelekolio, 74 Haw. 479, 524, 849 P.2d 58, 78 (1993))). On this record, Dandurand has not shown that the alleged error constituted ineffective assistance of counsel.

(2) Dandurand contends that "[t]he DPA committed misconduct during his closing where he expressed his personal belief that Dandurand's behavior was not consistent with a victim of abuse." Specifically, Dandurand points to a segment of the DPA's closing argument when he showed a Facebook video of Brown and Dandurand to the jury and stated:

> In her petition for an order for protection [Dandurand] alleged abuse that was happening from September of 2017 to the date of the arrest. Look at the date when this Facebook video was posted. Right in the heart of this purported period of prolonged abuse. You know it's not true. That is not the way a person behaves if they are subjected to the kind of abuse which she claims.

(Emphasis added.) Although the defense did not object to this statement during trial, Dandurand argues on appeal that the underlined comment "was effectively pseudo-expert testimony on the typical behavior of a victim of abuse" that affected her duress defense and thus the trial outcome.

"Prosecutorial misconduct" is "a legal term of art that refers to any improper action committed by a prosecutor,

8

however harmless or unintentional." State v. Willis, 156 Hawaiʻi 195, 204, 572 P.3d 668, 677 (2025) (quoting State v. Udo, 145 Hawaiʻi 519, 534, 454 P.3d 460, 475 (2019)). "Whenever a defendant alleges prosecutorial misconduct, this court must first decide: (1) whether the conduct was improper; and (2) if the conduct was improper, whether the misconduct was harmless beyond a reasonable doubt." Id. (internal quotation marks omitted) (quoting Udo, 145 Hawaiʻi at 534-35, 454 P.3d at 475-76).

"It is well-established that prosecutors are afforded wide latitude in closing to discuss the evidence, and may state, discuss, and comment on the evidence as well as to draw all reasonable inferences from the evidence." Id. (brackets and internal quotation marks omitted) (quoting Udo, 145 Hawaiʻi at 536, 454 P.3d at 477). However, prosecutors may not express their personal views about the evidence or introduce new information or evidence in closing argument. See State v. Hirata, 152 Hawaiʻi 27, 33, 520 P.3d 225, 231 (2022) (citing State v. Marsh, 68 Haw. 659, 660, 728 P.2d 1301, 1302 (1986), and State v. Basham, 132 Hawaiʻi 97, 113, 319 P.3d 1105, 1121 (2014)).

Dandurand argues that the DPA's comment here is similar to the comment found to be improper in Hirata. There, the prosecutor argued that the complaining witness testified "consistent with a child who is traumatized" but presented no expert witnesses who could testify about her mental health or psychological condition. Id. at 33, 520 P.3d at 231. The Hawaiʻi Supreme Court ruled that the prosecutor committed misconduct because she expressed her personal belief and injected new evidence not supported by the record. Id. In State v. Browder, 154 Hawaiʻi 237, 549 P.3d 322 (2024), the court further explained that "'[t]rauma,' and the state of being 'traumatized,' are loaded terms" and because these terms have "a specialized psychological meaning[,]" their use in closing argument requires supporting expert testimony. Id. at 242, 244-45, 549 P.3d at 327, 329-30.

This situation is different. The defense argued in its opening that Dandurand was physically abused by Brown and was not

9

criminally responsible because she feared him and was not acting voluntarily. Dandurand then testified that she was physically abused and threatened by Brown, and based on incidents in September through December 2017, she obtained an order of protection in 2020 while in custody. In response, the DPA in closing played the Facebook video of Brown and Dandurand, which had been admitted into evidence as States' Exhibit 451, showing them joking and holding each other during the 2017 time period; the DPA commented, "That is not the way a person behaves if they are subjected to the kind of abuse which she claims."[6/] In this context, we do not view the DPA's reference to "abuse" as the use of a "loaded term" requiring expert testimony, but part of an argument based on a reasonable inference that the video evidence contradicted Dandurand's claimed defense. See Willis, 156 Hawaiʻi at 207, 572 P.3d at 680; cf. Menendez v. Terhune, 422 F.3d 1012, 1034, 1037 (9th Cir. 2005) (ruling that prosecutor's comments during closing argument, that petitioners' father was a patient man who would not abuse his sons, was not improper where petitioners presented substantial evidence relating to alleged abuse by their father to support their battered person's syndrome defense, and prosecutor's comments were made based on other evidence that tended to show that the father was not abusive). The DPA's argument was not improper.

(3) Dandurand contends that the Circuit Court erred in finding that M.E. was competent to testify because she was not asked to explain her understanding of the oath or the "consequences for violating that oath." Dandurand also points to inconsistencies in M.E.'s testimony. We review the court's determination under the right/wrong standard. State v. Kelekolio, 74 Haw. 479, 527 n.23, 849 P.2d 58, 80 n.23 (1993).

HRE Rule 603.1 states that a person is disqualified as

---

[6/] Immediately prior to playing the Facebook video, the DPA showed the jury a "social media picture that became the linchpin of the investigation" – an apparent reference to State's Exhibit 254, a photo of Brown and Dandurand together smiling, which was provided to police and led to Defendants' arrest. The DPA asked the jury: "Is this the picture of a woman who looks abused? Who had been subjected to the kind of abuse she would have you believe is true as detailed in that petition [for the order of protection]?"

a witness "if the person is (1) incapable of expressing oneself so as to be understood, either directly or through interpretation by one who can understand the person, or (2) incapable of understanding the duty of a witness to tell the truth."  "[T]he question of testimonial competency must be determined on a case by case basis."  Kelekolio, 74 Haw. at 528, 849 P.2d at 80.

The Circuit Court did not err in finding that M.E. was competent to testify at trial.  During the March 5, 2021 competency hearing, M.E. described the difference between a truth and a lie, knew what a judge was, said she was willing to take an oath, promised to tell the truth, and knew that a person can get in trouble for lying.  M.E. also properly responded to two examples of a truth posed by the DPA and one example of a lie posed by Trial Counsel.  Similarly, in State v. Damo, where the minor "testified that he understood the truth and that he would testify truthfully" and "responded to questions from the family court about three examples of the truth," this court concluded that the family court did not err in finding that the minor was competent to testify at trial under HRE Rule 603.1.  No. 29644, 2010 WL 3390064, at *1 (Haw. App. Aug. 30, 2010) (SDO).  Dandurand's argument is without merit.

(4) Dandurand contends that the Circuit Court erred in denying Brown's December 4, 2023 Motion to Impanel a Jury Prior to the Imposition of a Consecutive Imprisonment Sentence, which Dandurand joined (**Motion to Impanel a Jury**).  She relies on Alleyne v. United States, 570 U.S. 99 (2013), in which the United States Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an element that must be submitted to the jury, id. at 103, and State v. Auld, 136 Hawaiʻi 244, 361 P.3d 471 (2015), in which the Hawaiʻi Supreme Court held that a defendant is entitled to have a jury find beyond a reasonable doubt that their prior convictions trigger the imposition of a mandatory minimum sentence as a repeat offender under HRS § 706-606.5, id. at 254, 361 P.3d at 481.  Dandurand argues that the reasoning in Alleyne and Auld should apply to consecutive sentencing, such that, here, the court could not issue consecutive sentences "without a jury's determination on

necessity for the protection of the public."  Further, Dandurand contends that State v. Kahapea, 111 Hawaiʻi 267, 141 P.3d 440 (2006), was "wrongly decided" in light of Alleyne[7] and Auld, and the reasoning in Oregon v. Ice, 555 U.S. 160 (2009)[8] has been "called into question by the [U.S.] Supreme Court's recent trend towards leaving [the relevant] factual inquiries to the jury."

Alleyne and Auld are distinguishable - they did not affect judicial fact-finding related to consecutive sentencing. See State v. Thompson, No. CAAP-17-0000427, 2018 WL 4611273, at *4 (Haw. App. Sept. 26, 2018) (mem. op.), vacated on other grounds, No. SCWC-17-0000427, 2020 WL 2846618 (Haw. June 1, 2020) (SDO).  Rather, Kahapea governs this situation.  There, the Hawaiʻi Supreme Court held that Apprendi does not apply to a sentencing judge's factfinding to impose consecutive sentences under HRS § 706-668.5, which entails consideration of the factors set forth in HRS § 706-606.  See Kahapea, 111 Hawaiʻi at 278-80, 141 P.3d at 451-53 (rejecting the argument that Apprendi proscribes factfinding for consecutive sentencing by a trial judge).  While consecutive sentences lengthened the defendant's incarceration beyond the statutory maximum for one individual sentence, none of the individual terms of imprisonment exceeded the statutory maximum.  Id. at 279, 141 P.3d at 452.  The Hawaiʻi Supreme Court concluded that pursuant to HRS §§ 706-660 and 706-668.5, the defendant's sentence of multiple terms running consecutively *was* the statutory maximum.  Id. at 279-80, 141 P.3d at 452-53.

Similarly, here, Dandurand's three consecutive sentences enhanced her terms of imprisonment beyond the statutory maximum for one individual sentence, but none of the individual terms of imprisonment exceeded the statutory maximum.  Therefore,

---

[7]    Dandurand argues that Alleyne "broadened [the] reach" of Apprendi v. New Jersey, 530 U.S. 466 (2000), "beyond statutory maximums."  In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.

[8]    In Ice, the United States Supreme Court held that the Sixth Amendment does not inhibit the State from assigning to judges, rather than to juries, findings of facts necessary to the imposition of consecutive, rather than concurrent, sentences for multiple offenses.  555 U.S. at 163-64.

the Circuit Court did not err in denying Dandurand's Motion to Impanel a Jury.

(5) Dandurand contends that the Circuit Court erred in admitting the Shoot-Me Statement made to Cpl. Kaʻawa because "it was the product of an un-Mirandized custodial interrogation." (Capitalization altered.) She argues that she was in custody when she made the statement because the police investigation had focused on her and Brown, Cpl. Kaʻawa and other officers were "around [her]," she was handcuffed, and her hands were bagged to "preserve evidence." She also argues that she was subject to an interrogation, in that Cpl. Kaʻawa instructed her to "stand up and look straight ahead" for the field show-up. This instruction, Dandurand asserts, "suggested that she was going to be identified as the perpetrator of the offense" and "the police should have known that handcuffing Dandurand, putting bags on her hands, and subjecting her to a witness identification was reasonably likely to make her conclude that she was under arrest as the perpetrator and would make incriminating statements."

Following the Voluntariness Hearing, the Circuit Court entered its September 19, 2022 Findings of Fact, Conclusions of Law and Order Granting State's Motion to Determine the Voluntariness of Defendants' Statements to the Police, in which the court determined that the Shoot-Me Statement was admissible. The trial court's decision on a motion to determine voluntariness "is the functional equivalent of a determination on a motion to suppress statements." State v. Jackson, No. 29842, 2010 WL 1679575, at *2 (Haw. App. Apr. 21, 2010) (mem.) (citing State v. Naititi, 104 Hawaiʻi 224, 234, 87 P.3d 893, 903 (2004)). We thus review the Circuit Court's ruling de novo to determine whether it was right or wrong. State v. Hewitt, 153 Hawaiʻi 33, 40, 526 P.3d 558, 565 (2023) (quoting State v. Weldon, 144 Hawaiʻi 522, 530, 445 P.3d 103, 111 (2019)).

Miranda warnings are required when probable cause to arrest has developed. Id. at 44, 526 P.3d at 569 (citing State v. Ketchum, 97 Hawaiʻi 107, 126, 34 P.3d 1006, 1025 (2001)). The evidence from the Voluntariness Hearing did not show that the police had probable cause to arrest Dandurand prior to the

identification made at the field show-up.

Even when police do not have probable cause to arrest, a person is in custody for <u>Miranda</u> purposes if the totality of circumstances — including "the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and all other relevant circumstances" — objectively show the person "was in custody or otherwise deprived of their freedom of action" in a significant way. <u>Hewitt</u>, 153 Hawaiʻi at 45, 526 P.3d at 570 (brackets omitted) (quoting <u>State v. Patterson</u>, 59 Haw. 357, 361, 581 P.2d 752, 755 (1978)); <u>Miranda</u>, 384 U.S. at 444 (defining "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way"). Here, the Circuit Court concluded that Dandurand was in custody when she stood next to Cpl. Kaʻawa for the field show up. The State does not dispute this determination, and we conclude that it was correct.

In determining whether "interrogation" has occurred, "the ultimate inquiry is whether a law enforcement officer knew or should have known that their words or conduct were reasonably likely to elicit an incriminating response from the defendant, even though the words and conduct might also be 'normally attendant to arrest and custody.'" <u>State v. Hoffman</u>, 155 Hawaiʻi 166, 169, 557 P.3d 895, 898 (2024) (citing <u>State v. Skapinok</u>, 151 Hawaiʻi 170, 173, 510 P.3d 599, 602 (2022)). "[I]nterrogation encompasses not only express questioning, but also any words or actions on the part of the police . . . that [they] should know are reasonably likely to elicit an incriminating response from the suspect." <u>State v. Trinque</u>, 140 Hawaiʻi 269, 277, 400 P.3d 470, 478 (2017) (original ellipses and internal quotation marks omitted).

Here, the Circuit Court found the following relevant facts, none of which are disputed.

> 54. [Cpl. Kaʻ]awa came into contact with . . . Dandurand in front of the Starbucks.
>
> 55. [Cpl. Kaʻ]awa bagged . . . Dandurand's hands to preserve potential evidence and stood near her during

14

the administration of a field show-up. The show-up took place in the area fronting Starbucks.

56. [Cpl. Ka'awa instructed . . . Dandurand to look straight ahead, stand up, and not move.

57. After [Cpl. Ka'awa instructed . . . Dandurand to stand up, [she] said, "You may as well pullout your gun and shoot me. After today, my life is over."

58. Neither [Cpl. Ka'awa nor any police officer asked . . . Dandurand any questions before she said this.

59. After [Cpl. Ka'awa became aware of the results of the field show-up, he placed . . . Dandurand under arrest for unauthorized entry into motor vehicle.

60. [Cpl. Ka'awa did not give <u>Miranda</u> warnings to . . . Dandurand.

We conclude that in these circumstances, the words and actions of Cpl. Ka'awa prior to her Shoot-Me Statement were not reasonably likely to elicit an incriminating response from Dandurand. He did not ask her any questions or the functional equivalent of any question. His simple, straightforward instruction did not call for a verbal response. Dandurand's verbal response was unsolicited, spontaneous, and voluntary. The Circuit Court did not err in concluding that Dandurand was not interrogated and that the Shoot-Me Statement was admissible.

(6) Dandurand contends that the Circuit Court abused its discretion in precluding her from calling certain expert witnesses as a sanction for discovery violations under HRPP Rule 16. Dandurand argues that "[t]he drastic sanction of exclusion of [her] expert witnesses in violation of her constitutional right to a fair trial was far too severe a sanction for Trial Counsel's Rule 16 violations and the Court gave no indication that it considered the factors as required by [State v. ]Ahlo[, 79 Hawai'i 385, 903 P.2d 690 (App. 1995)] and [State v. ]Inman[, 121 Hawai'i 195, 216 P.3d 121 (App. 2009)]."

We review the court's imposition of sanctions under HRPP Rule 16 for abuse of discretion. <u>Inman</u>, 121 Hawai'i at 199, 216 P.3d at 125 (citing <u>Ahlo</u>, 79 Hawai'i at 398, 903 P.2d at 703). When determining the appropriate sanction to impose under HRPP Rule 16 for a defendant's discovery violation, the trial court must consider: "(1) whether the defendant was acting maliciously or in bad faith; (2) the extent of prejudice to the

15

prosecution caused by the violation; (3) whether the prejudice could have been cured by measures less severe than excluding evidence; and (4) any other relevant circumstances." Inman, 121 Hawaiʻi at 199, 216 P.3d at 125 (citing Ahlo, 79 Hawaiʻi at 400, 903 P.2d at 705).

Here, Dandurand failed to disclose reports by experts who allegedly would have testified regarding battered spouse syndrome. On April 9, 2020, Dandurand filed her first witness list, identifying Dr. Robert Geffner (**Geffner**), Dr. Mindy Mechanic (**Mechanic**), Dr. Duke Wagner (**Wagner**), Steve Goodenow (**Goodenow**), and Jill Spector, Esq. (**Spector**), and referencing reports prepared by these witnesses. The State and Brown made repeated requests or motions for disclosure of the names of Dandurand's expert witnesses and their reports, and the court repeatedly ordered her to produce that information. During a December 8, 2021 status conference, however, Trial Counsel indicated that he had not obtained any experts. At a September 6, 2022 hearing, the Circuit Court recognized that Trial Counsel still had not retained any expert witnesses. The next day, the State sent a letter to Trial Counsel again requesting disclosure of the names of expert witnesses and their reports. Jury selection began on July 10, 2023, and on the fourth day, it became clear that Dandurand did intend to call expert witnesses. The State objected based on the failure to disclose their names and reports. The Circuit Court concluded that Dandurand had not complied with the court's disclosure deadlines, and "[g]iven the procedural history of this case, including the representations by defense counsel, . . . preclusion of any unnoticed defense experts . . . is just under the circumstances of this case." The court precluded Dandurand from calling Geffner, Mechanic, Wagner, Goodenow, and Spector.

Given the procedural history of this issue, it appears that the defense was acting in bad faith in stating that it had no experts, not disclosing expert reports, and then during jury selection indicating it planned to call expert witnesses. The prejudice to the State was significant, given that trial had commenced; "complete and accurate pretrial discovery of expert

witnesses is critical to a fair trial," Barcai v. Betwee, 98 Hawaiʻi 470, 481, 50 P.3d 946, 957 (2002) (quoting Lee v. Elbaum, 77 Hawaiʻi 446, 454, 887 P.2d 656, 664 (App. 1993)); and the State was seemingly deprived of sufficient time to retain rebuttal witnesses. It appears that the Circuit Court attempted to avoid an exclusion sanction by allowing the defense to produce evidence that it had disclosed Geffner's report to the State – to no avail. Other relevant circumstances weighing heavily against a further delay in trial included that jury selection had begun, over 500 prospective jurors had been summoned, and the State had brought in 40 witnesses, including several from the mainland and out of the country. On this record, the Circuit court did not abuse its discretion in entering the preclusion order.

(7) Dandurand contends that the Circuit Court abused its discretion in denying her Motion to Continue Sentencing Hearing. She argues that such a continuance was necessary to allow her time to secure a "sentencing mitigation specialist" or to file a writ challenging the court's denial of the motion.

"A motion for continuance is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal absent a showing of abuse of that discretion." State v. Lee, 9 Haw. App. 600, 603, 856 P.2d 1279, 1281 (1993) (citing State v. Gager, 45 Haw. 478, 488, 370 P.2d 739, 745 (1962)). In evaluating whether a motion for continuance should have been granted, the relevant factors are: "(1) whether counsel below exercised due diligence in seeking to obtain the attendance of the witness; and (2) whether the witness provides relevant and material testimony that benefits the defendant." State v. Williander, 142 Hawaiʻi 155, 163-64, 415 P.3d 897, 905-06 (2018).

Here, Dandurand did not exercise due diligence in seeking to obtain the attendance of the sentencing mitigation specialist, King, she identified in the Motion to Continue Sentencing Hearing. Dandurand had ample notice and time to prepare for extended term sentencing, as the December 12, 2017 Indictment specifically mentioned extended term sentencing and the State's January 5, 2018 "Notice of Eligibility for Sentencing

Pursuant to Sections 706-661 and 706-662(4)(a) of the [HRS]" expressly "g[ave] notice of . . . Dandurand's eligibility for sentencing to an extended term and/or terms of imprisonment and the prosecution's intention to seek such sentencing scheme." Yet it appears from the declaration attached to the Motion to Continue Sentencing Hearing that Trial Counsel did not attempt to retain King until after Dandurand's conviction. It is also unclear whether King would have provided "relevant and material testimony that benefit[ted]" Dandurand, as the defense did not present an affidavit or other sworn statement describing King's qualifications or anticipated testimony.

On this record, the Circuit Court did not abuse its discretion in denying the Motion to Continue Sentencing Hearing.

For the reasons discussed above, we affirm the following, entered by the Circuit Court of the First Circuit: the December 6, 2023 Judgment of Conviction and Sentence; (2) the December 6, 2023 Mittimus; Warrant of Commitment; (3) the December 12, 2023 Order Granting State's Motion for Extended Term Sentencing; (4) the December 12, 2023 Order of Restitution; and (5) the December 21, 2023 Findings of Fact, Conclusions of Law, and Order Granting in Part State's Motion for Consecutive Term Sentencing. We affirm without prejudice to a subsequent HRPP Rule 40 petition raising the ineffective assistance of counsel claims identified in section (1)(a) and (c) of this summary disposition order.

DATED: Honolulu, Hawaiʻi, March 25, 2026.

On the briefs:

Alen M.K. Kaneshiro
(Law Offices of Alen M.K. Kaneshiro)
for Defendant-Appellant.

Robert T. Nakatsuji,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge